Joseph Rakofsky, Esq.
INJURY & ACCIDENT LAW RAKOFSKY, LLC
P.O. Box 32250
Newark, New Jersey 07102
Tel.(888) 977-0090
Fax.(888) 977-4711
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ARIELLE FLETCHER**<br><br>*Plaintiff,*<br><br>v.<br><br>**GATEWAY GROUP ONE,<br>BENJAMIN OKOLI,<br>STATE OF NEW JERSEY,<br>COUNTY OF ESSEX,<br>CITY OF NEWARK,<br>CITY OF ELIZABETH,<br>EMERSON RUSSELL<br>MAINTENANCE COMPANY AVIATION**<br><br>*Defendants.* | **COMPLAINT AND<br>JURY DEMAND**<br><br><br>CIVIL ACTION NO.<br>2:20-cv-3413 |

1. COMES THIS DAY Plaintiff, Ms. Arielle Fletcher (hereinafter "Plaintiff"), by and through her undersigned counsel, who sets forth this Complaint for Damages against the above-named Defendants.

2. Plaintiff respectfully shows this Court as follows:

**INTRODUCTORY STATEMENT**

3. Plaintiff, Arielle Fletcher, was employed by GATEWAY GROUP ONE ("Defendant, GATEWAY GROUP ONE") in Newark, New Jersey, which may also be doing business as or under EMERSON RUSSELL MAINTENANCE COMPANY AVIATION. She

brings this Title VII action for maintaining a hostile work, sex-discrimination perpetrated by her co-employee, Defendant, BENJAMIN OKOLI, and retaliation for engaging in activities protected by Title VII.

4. Defendant, BENJAMIN OKOLI's harassing conduct included engaging in unwelcomed and forced offensive touching, grabbing, and unwanted mouth contact; and making unwelcomed lewd, sexual, and aggressive comments. This sexually harassing conduct was both severe and pervasive and created a hostile work environment for Plaintiff. Although aware of Defendant, BENJAMIN OKOLI's conduct, GATEWAY GROUP ONE failed to protect Plaintiff adequately and terminated her for engaging in protected actives. Plaintiff also brings a claim for retaliation.

5. On June 22, 2019, Defendant, BENJAMIN OKOLI, physically attacked Plaintiff. Consequently, Plaintiff filed a Police Report. The Report Case Number is 19N-16604.

## JURISDICTION & VENUE

6. This court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331,1343(a)(4).

7. This action arises under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e, *et seq*.

8. Venue is proper pursuant to, *inter alia*, 28 U.S.C. §1391(b)(2) and 42 U.S.C. § 2000e5(f)(3). Moreover, the unlawful employment practices alleged below were committed within the geographic boundaries of the Newark Vicinage of the United States District Court, within the state of New Jersey.

9. Defendant, GATEWAY GROUP ONE, operates within the geographic boundaries of the Newark Vicinage of the United States District Court for the State of New Jersey.

10. This Court has personal jurisdiction over Defendant, GATEWAY GROUP ONE, as its registered agent is located within the geographic boundaries of this Court and operate within the geographic boundaries of this Court, and the injuries complained of accrued therein.

## PARTIES

11. Plaintiff is, and was at all times relevant herein, a female citizen of the United States and a resident of Essex County, in the State of New Jersey.

12. Defendant, CITY OF NEWARK, partially-owns the Newark Liberty International Airport and is, therefore, the relevant executive agency. Accordingly, Defendant, CITY OF NEWARK, is named as defendant in this action pursuant to 28 U.S.C. § 2000e-16(c).

13. Defendant, CITY OF ELIZABETH, partially-owns the Newark Liberty International Airport and is, therefore, head of the relevant executive agency. Accordingly, Defendant, CITY OF ELIZABETH, is named as defendant in this action pursuant to 28 U.S.C. § 2000e-16(c). Defendant is sued in her official capacity only.

14. Upon information and belief, Defendant, GATEWAY GROUP ONE, is an "Employer," which had more than 15 employees and, therefore, within the meaning of Title 7 of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq., and New Jersey's Law Against Discrimination, 10:5-12 et. seq.

15. Upon information and belief, Defendant, GATEWAY GROUP ONE, has, at all times relevant herein, been authorized to conduct business in the State of New Jersey. Its facility is located in Newark Liberty International Airport in Newark, New Jersey, which is partially owned by both Defendant, CITY OF NEWARK and Defendant, CITY OF ELIZABETH.

16. Defendant, BENJAMIN OKOLI, upon information and belief, is at all times relevant herein, an individual, employed as an agent of Defendant, GATEWAY GROUP ONE.

17. Defendant, EMERSON RUSSELL MAINTENANCE COMPANY AVIATION (hereinafter referred to as "ERMC"), upon information and belief, is at all times relevant herein, an agent or partner or alias of Defendant, GATEWAY GROUP ONE.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. Plaintiff has complied with all administrative procedures that are conditions precedent to the filing of the instant matter and, as a result, has exhausted all remedies available to her. The Plaintiff has timely filed a Notice of Claim with the State of New Jersey, County of Essex and City of Newark. (*See* Plaintiff's Exhibit A, attached hereto and hereby incorporated by reference as if fully set forth herein).

19. On or about April 5, 2019, Plaintiff met with Luis Thomas, Port Authority Supervisor, and advised him of her fears. At that time, he directed Plaintiff to speak with Human Resources.

20. On or about June 21, 2019, Plaintiff attempted to speak with her Managers, Octavia Marinho and Vera Gomez. However, both refused to listen to Plaintiff.

21. On or about June 21, 2019, Plaintiff provided a written statement to Human Resource Manager, Kenia Henriquez, advising Ms. Henriquez of her experience.

22. On or about June 21, 2019, Plaintiff provided a written statement to Manager, Octavia Marinho, advising her of the attack perpetrated by Defendant, BENJAMIN OKOLI.

23. On or about June 21, 2019, Plaintiff provided an oral statement to Union Delegate Stafford Woods Jr. However, Stafford Woods Jr. expressly refused to assist Plaintiff.

24. On or about June 21, 2019, Plaintiff provided a written statement, detailing the attack perpetrated by Defendant, BENJAMIN OKOLI, to Newark Liberty International Airport Police Officer Reyes.

25. On or about June 21, 2019, Plaintiff provided a written statement to Union Representatives, Mickey Santiago and Mario Rivera, which described the attack perpetrated by Defendant, BENJAMIN OKOLI.

26. On June 21, 2019, Plaintiff contacted Human Resources Services Kenia Henriquez. However, Kenia Henriquez failed (or refused) to respond to Plaintiff.

27. At approximately the time in which Plaintiff was attacked by Defendant, BENJAMIN OKOLI, Plaintiff met with her Union Delegate, Stafford.

28. Therefore, the instant action is being filed, not sooner than 60 days of the aforementioned filed Notices of Claim.

29. Plaintiff has exhausted any and all available administrative remedies available to her. Whereas Plaintiff has no other available remedy at all Plaintiff therefore files the instant suit.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

30. Plaintiff incorporates by reference the foregoing, above, as if fully set forth herein.

31. Plaintiff is female. Plaintiff's racial ethnicity is of African American descent. After satisfying all of the employment requirements, Plaintiff began working for GATEWAY GROUP ONE (*a.k.a.* ERMC), located at Newark Liberty International Airport in Newark, New Jersey.

32. Plaintiff suffers from a physical disability, to-wit: life-threatening seizures.

33. In addition, Plaintiff is registered as a survivor of Domestic Violence in both, New Jersey and Pennsylvania.

34. Plaintiff was employed in the capacity of a Customer Sales Representative in Newark, New Jersey.

35. On or about January 15, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

36. On or about January 21, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. At this time, she was transported to the hospital by ambulance.

37. On or about January 22, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

38. On or about February 4, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

39. On or about February 7, 2019 through February 9, 2019, Plaintiff suffered seizures, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

40. On or about February 14, 2019 through February 16, 2019, Plaintiff suffered seizures, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

41. On or about March 9, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

42. On or about March 14, 2019 through March 16, 2019, Plaintiff suffered seizures, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

43. On or about April 12, 2019 through April 14, 2019, Plaintiff suffered seizures, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

44. On or about April 30, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

45. On or about May 7, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

46. On or about May 21, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

47. On or about May 27, 2019 through May 30, 2019, Plaintiff suffered seizures, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

48. On or about June 21, 2019, Plaintiff suffered a seizure. At this time, she was transported to the hospital by ambulance.

49. On or about June 25, 2019 through June 26, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

50. On or about July 3, 2019, Plaintiff suffered a seizure. At this time, she was transported to the hospital by ambulance.

51. On or about July 19, 2019 through July 20, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

52. On or about July 29, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

53. On or about July 31, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

54. Throughout Plaintiff's employment and until her employment was terminated, Managers, Octavia Marinho and Vera Gomez, prohibited Plaintiff from taking her necessary, life-saving seizure medication, while on her break in the employee breakroom. Instead, Managers, Octavia Marinho and Vera Gomez, relegated Plaintiff to the public bathroom, which was frequently filthy, unclean and far away, when she was required to administer her medication, which were in the form of pills.

55. On or about June 5, 2019, Defendant, BENJAMIN OKOLI, a male, began harassing Plaintiff, while stationed at P4 Lobby at the Airport. At the time, Plaintiff was afraid to report Defendant, BENJAMIN OKOLI, because he was the Supervisor, who held positions of power and authority at work and in the Union. Defendant, BENJAMIN OKOLI's abusive and violent behavior continued after Plaintiff told him to "Stop" invading her personal space, which he did frequently while yelling at Plaintiff in an angry and threatening manner.

56. Shortly thereafter, on June 21, 2019, Plaintiff approached Defendant, BENJAMIN OKOLI, about his abusive behavior. At that time, again, Defendant, BENJAMIN OKOLI, continued to be abusive and disrespectful. Only moments later Defendant, BENJAMIN OKOLI, assaulted Plaintiff.

57. Shortly after the assault, Plaintiff filed a Police Report with the Port Authority Police Department, which is designated as Case # 19-007840.

58. At that time, Defendant, BENJAMIN OKOLI, attacked Plaintiff despite the fact that she is registered as a survivor of Domestic Violence.

59. On or about June 21, 2019, Plaintiff attempted to speak with her Managers, Octavia Marinho and Vera Gomez. However, both refused to listen to Plaintiff.

60. On or about June 21, 2019, Plaintiff provided a written statement to Human Resource Manager, Kenia Hernandez, advising Ms. Henriquez of her experience.

61. On or about June 21, 2019, Plaintiff provided a written statement to Manager, Octavia Marinho, advising her of the attack perpetrated by Defendant, BENJAMIN OKOLI.

62. On or about June 21, 2019, Plaintiff provided an oral statement to Union Delegate Stafford Woods Jr. However, Stafford Woods Jr. expressly refused to assist Plaintiff.

63. On or about June 21, 2019, Plaintiff provided a written statement, detailing the attack perpetrated by Defendant, BENJAMIN OKOLI, to Newark Liberty International Airport Police Officer Reyes.

64. On or about June 21, 2019, Plaintiff provided a written statement to Union Representatives, Mickey Santiago and Mario Rivera, which described the attack perpetrated by Defendant, BENJAMIN OKOLI.

65. On June 21, 2019, Plaintiff contacted Human Resources Services, Kenia Henriquez. However, Kenia Henriquez failed (or refused) to respond to Plaintiff.

66. Approximately two days later, on June 23, 2019, Managers, Octavia Marinho and Vera Gomez, expressly accused Plaintiff of being a liar and entirely refuted Plaintiff's account of the assault.

67. Over the next several months, Human Resources refused or failed to respond to Plaintiff's written communications with respect to the abuse she suffered.

68. Plaintiff's employer knew, or should have known, about the attacks and harassment and failed to take prompt, corrective action.

69. In late July 2019, Manager, Octavia Marinho, suspended Plaintiff's employment.

70. Further, the manner in which Plaintiff's employment was terminated was in direct violation of Defendant, GATEWAY GROUP ONE's own policy memorialized in Defendant, GATEWAY GROUP ONE's policy.

71. However, once again, she received absolutely no response from administrative entities responsible for protecting her safety. Further, despite asking for copies of her performance reviews and write-ups, Defendant, GATEWAY GROUP ONE, through Manager, Vera Gomez, and Human Resource Manager, Ms. Kenia Hernandez, refused to provide such materials to Plaintiff.

72. In addition to the loss of income Plaintiff suffered as a result of Plaintiff's wrongful suspension and the unlawful employment conditions in which she has been required to suffer, Plaintiff also lost all of the benefits associated with her employment with Defendant, GATEWAY GROUP ONE, which included health and unemployment insurance.

## EMPLOYEE HANDBOOK

73. Before Plaintiff (and every employee) is hired by Defendant, GATEWAY GROUP ONE, each applicant is provided with an "Employee Handbook" and is required to sign an "Employee Acknowledgement," which is contained in it, a true copy of which is attached hereto as Plaintiff's Exhibit B, hereby incorporated by reference as if fully set forth herein.

74. "Our success is attributed to the dedication and superior performance of our officers, management and staff throughout our organization." *Employee Handbook,* at page 2. "We believe in and hold the highest respect for the rights and dignity of each employee." *Id.* at 2. "[I]f you have any questions concerning...the applicability of a policy or practice, you should address your specific questions to Corporate Human Resources." *Id.* at page 5.

75. "It is the policy of this Company that there shall be no discrimination with respect to employment or any of the terms and conditions of employment, because of an individuals' [sic] race, creed, religion, color, national origin, ancestry, age, sex, sexual orientation...and any other legally protected status. *Id.* at page 6.

76. Gateway Group One strictly prohibits harassment in any form, including harassment based on race, ethnicity, sex, religion, marital status, age, disability or sexual orientation. *Id.* at page 7.

77. "Harassment refers to behavior that is not welcome, fails to respect the rights of others, interferes with work performance or is reasonably perceived as offensive by the recipient or those persons in the same environment." *Id.* at page 7. "There should be no retaliation against any person filing such complaints." *Id.* at page 7.

78. "It is illegal and against the policies of this Company for any person to sexually harass any employee by: Making unwelcome sexual advances or requests for sexual favors, or other verbal or physical conduct of a sexual nature as condition of an employee's continued employment; or Making submission to, or rejection of such conduct the basis for employment decisions affecting the employee; or Creating an intimidating, hostile, or offensive working environment by such conduct." *Id.* at page 8.

79. "Sexual harassment includes, but is not limited to unwelcome sexual flirtation, advances or propositions, verbal abuse of a sexual nature; subtle pressure or request verbal commentaries about an individual's body; sexually degrading words used to describe an individual; a display in the workplace of sexually suggestive objects or picture; sexually explicit or offensive jokes; or physical assault." *Id.* at page 8. "An employee who is uncomfortable for

any reason in bringing such matter to attention of such person may utilize the Ethics Hotline or contact Corporate Human Resources." *Id.* at page 8.

80. "Any form of retaliation against any individual for filing a bona fide complaint under this policy or for assisting in a complaint investigation is expressly prohibited. Any individual violating this anti-retaliation provision will be subject to appropriate disciplinary action, up to and including termination." *Id.* at page 9.

81. "Employees of Gateway Group One have an obligation to conduct business within the guidelines that prohibit actual or potential conflict of interest and deprives the Company of that person's loyalty when acting on its behalf." *Id.* at page 9.

82. "It is the employee's continuing responsibility to report any relationship, activity or interest that might involve an actual or potential conflict of interest." *Id.* at page 9.

83. "No conduct that is immoral, unsafe, unethical or illegal will be tolerated. The following are examples of some prohibited conduct: Fighting…Use of abusive or threatening language or behavior." *Id.* at page 16.

84. "Gateway Group One is committed to providing a safe and secure workplace. In furtherance of this objective, the occurrence of any harassing, threatening or violent actby any Company employee to another Company employee is declared to be unacceptable behavior that will not be tolerated. This zero tolerance policy applies to unacceptable behavior by Company employees, or by persons outside the Company if directed to person on Company premises." *Id.* at page 28.

85. "All employees are directed to report immediately his/her supervisor or Human Resources any violent act, threat of violence, harassing or intimidating speech, or similar behavior that the employee has received or witnessed." *Id.* at page 28.

86. "Any employee who has obtained a Protection from Abuse (Restraining Order) or similar court order, which restricts other individuals from contacting or visiting the employee on Company property, should notify his or her supervisor of such court order. The company's ability to take appropriate preventative and remedial action will be greatly enhanced if the Company is made aware of the issuance of the order as soon as reasonably possible." *Id.* at page 28.

87. "Employee complaints or reports may be made in writing or in person. All complaints will be investigated promptly, thoroughly, and in as confidential a manner as is practical." *Id.* at page 28.

88. "Proven violations of this policy will result in one or all of the following actions: Appropriate disciplinary action up to and including termination of employment; Notation of the violation in the offending party's performance appraisal; Notation of the investigation in the offending party's personnel file; When and where appropriate, referral of the incident to local law enforcement authorities." *Id.* at page 29.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION:
### VIOLATION OF TITLE VII
### HOSTILE WORK ENVIRONMENT

89. Plaintiff incorporates by reference the foregoing paragraphs, above, as if fully set forth herein.

90. Plaintiff, who is a female, African American and physically disabled, belongs to a protected class as defined by Title VII.

91. After Plaintiff began working for Defendant, GATEWAY GROUP ONE (*a.k.a.* ERMC) Defendant, OKOLI, began sexually harassing her.

92. The harassment was unwelcome and was a direct result of her race and sex.

93. Defendant, OKOLI, did not sexually harass any male employees.

94. This unwelcomed sexual harassment was sufficiently severe and pervasive enough to alter the terms and conditions of Plaintiff's employment and to create a hostile and discriminatorily abusive working environment.

95. Defendant, GATEWAY GROUP ONE, knew, or should have known, about the harassment and violence, and failed to take prompt, corrective action.

96. The aforementioned harassment and hostility would have detrimentally affected a reasonable person in like circumstances.

97. As a direct and proximate result of the above-mentioned discriminatory conduct, Plaintiff suffered damages including lost wages and benefits, diminished employment opportunities and emotional distress, for which Defendants are liable.

## SECOND CAUSE OF ACTION:
## VIOLATION OF TITLE VII
## UNLAWFUL RETALIATION

98. Plaintiff incorporates by reference the foregoing paragraphs, above, as if fully set forth herein.

99. Plaintiff engaged in protected activity under Title VII by making oral and written complaints of sexual harassment and abuse to her employer.

100. Subsequent to Plaintiff's complaints of sexual harassment and abuse, she was told she would be required to tolerate working with Defendant, OKOLI, and was, subsequently, forced to continue working with Mr. Smith.

101. Shortly thereafter, Plaintiff had her work hours and her job responsibilities reduced and was subjected to a hostile work environment.

102. Plaintiff's employment was terminated by Defendant, GATEWAY GROUP ONE (*a.k.a.* ERMC) on or about July 19, 2019, causing Plaintiff to sustain an adverse employment action.

103. There exists a causal connection between participation in the aforementioned activity protected by Title VII and the adverse employment action.

104. As a direct and proximate result of the above-mentioned discriminatory conduct, Plaintiff suffered lost wages and benefits, diminished employment opportunities and emotional distress, for which Defendants are liable.

**THIRD CAUSES OF ACTION**
**TITLE VII OF THE CIVIL RIGHTS ACT**
**WRONGFUL TERMINATION BASED ON DISCRIMINATION OF SEX**

105. Plaintiff incorporates by reference the foregoing paragraphs, above, as if fully set forth herein.

106. Plaintiff is a female, who is of African American decent and physically disabled, which renders her a member of three protected classes.

107. Plaintiff, who is a U.S. Citizen, was over the age of 18 and a High School Graduate when she was employed by Defendant, GATEWAY GROUP ONE (*a.k.a.* ERMC). She passed Defendant, GATEWAY GROUP ONE's criminal background check, drug screening, and medical assessment and also held a safe driving record.

108. Plaintiff was qualified to perform all duties for which she was hired. At all times relevant hereto Plaintiff adequately performed all of her job duties.

109. Other co-workers who are not members of a protected class were treated better than Plaintiff, as other co-workers engaged in more severe misconduct were disciplined less severely than Plaintiff.

110. Instead of the sexual and physical attacks of Plaintiff resulting in her protection by Defendants, Defendants elected to terminate her employment (*i.e.*, an "adverse" employment action).

111. Defendants' termination of Plaintiff was not a legitimate form of discipline based on the normal guidelines of the Defendant's own policy.

112. The stated reason for Plaintiff's termination of employment with Defendant was merely a pretext for the real reason of Plaintiff's termination: Plaintiff is a female who is African American and physically disabled.

113. Defendant violated 42 U.S.C. §2000e-2(a)(1) by discharging Plaintiff based on her race, sex and physical disability.

114. Defendants violated 42 U.S.C. §2000e-2(a)(2) by setting limits on and segregating Plaintiff's employment with Defendant based on her race, sex and physical disability.

## FOURTH CAUSES OF ACTION
## TITLE VII OF THE CIVIL RIGHTS ACT
## WRONGFUL TERMINATION BASED ON DISCRIMINATION OF RACE

115. Plaintiff incorporates by reference the foregoing paragraphs, above, as if fully set forth herein.

116. Plaintiff is a female, who is of African American and physically disabled, which renders her a member of three protected classes.

117. Plaintiff, who is a U.S. Citizen, was over the age of 18 and a High School Graduate when she was employed by Defendant, GATEWAY GROUP ONE (*a.k.a.* ERMC). She passed Defendant, GATEWAY GROUP ONE's criminal background check, drug screening, and medical assessment and also held a safe driving record.

118. Plaintiff was qualified to perform all duties for which she was hired. At all times relevant hereto Plaintiff adequately performed all of her job duties.

119. Other co-workers who are not members of a protected class were treated better than Plaintiff, as other co-workers engaged in misconduct were disciplined less severely than Plaintiff.

120. Instead of the sexual and physical attacks of Plaintiff resulting in her protection by Defendants, Defendants elected to terminate her employment.

121. Defendants' termination of Plaintiff was not a legitimate form of discipline based on the normal guidelines of the Defendant's own Corrective Action Policy.

122. The stated reason for Plaintiff's termination of employment with Defendant was merely a pretext for the real reason of Plaintiff's termination: Plaintiff is a female who is African American and physically disabled.

123. Defendant violated 42 U.S.C. §2000e-2(a)(1) by discharging Plaintiff based on her race, sex and physical disability.

124. Defendants violated 42 U.S.C. §2000e-2(a)(2) by setting limits on and segregating Plaintiff's employment with Defendant based on her race, sex and physical disability.

**FIFTH CAUSES OF ACTION**
**TITLE VII OF THE CIVIL RIGHTS ACT**
**WRONGFUL TERMINATION BASED ON PHYSICAL DISABILITY**

125. Plaintiff incorporates by reference the foregoing paragraphs, above, as if fully set forth herein.

126. Plaintiff is a female, who is of African American decent and physically disabled, which renders her a member of three protected classes.

127. Plaintiff, who is a U.S. Citizen, was over the age of 18 and a High School Graduate when she was employed by Defendant, GATEWAY GROUP ONE. She passed Defendant, GATEWAY GROUP ONE's criminal background check, drug screening, and medical assessment and also held a safe driving record.

128. Plaintiff was qualified to perform all duties for which she was hired. At all times relevant hereto Plaintiff adequately performed all of her job duties.

129. Other co-workers who are not members of a protected class were treated better than Plaintiff, as other co-workers engaged in more severe misconduct were disciplined less severely than Plaintiff.

130. Instead of the sexual and physical attacks of Plaintiff resulting in her protection by Defendants, Defendants elected to terminate her employment (*i.e.*, an "adverse" employment action).

131. Defendants' termination of Plaintiff was not a legitimate form of discipline based on the normal guidelines of the Defendant's own policy.

132. The stated reason for Plaintiff's termination of employment with Defendant was merely a pretext for the real reason of Plaintiff's termination: Plaintiff is a female who is African American and physically disabled.

133. Defendant violated 42 U.S.C. §2000e-2(a)(1) by discharging Plaintiff based on her race, sex and physical disability.

134. Defendants violated 42 U.S.C. §2000e-2(a)(2) by setting limits on and segregating Plaintiff's employment with Defendant based on her race, sex and physical disability.

**PRAYER FOR RELIEF**

135. Plaintiff incorporates by reference the foregoing paragraphs, above, as if fully set forth herein.

**WHEREFORE**, Plaintiff demands a trial by jury and for the following relief:

(a) that Summons issue;

(b) that Defendants be served with Summons and Complaint;

(c) that trial by jury of all issues be had;

(d) that judgment be issued against Defendant for any and all general, compensatory, special, and where applicable, punitive damages as allowed by law under each count and cause of action contained in this Complaint;

(e) for all costs of this action to be taxed against the Defendants;

(f) for all costs and attorney's fees to be awarded to Plaintiff; and,

(g) for any and all other further relief as this Court may deem just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL & CERTIFICATION

135. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, trial by jury is demanded as to all triable issues and claims.

136. I am not aware of any other case arising out of the facts stated herein or any other matter which may be brought as a result of the facts stated herein.

Respectfully submitted this 30TH day of March 2020,

Dated: March 30, 2020

/ Joseph Rakofsky/
Joseph Rakofsky, Esq.
TrialLawyerUSA@gmail.com
N.J. Bar No. 034462009
*Attorney for Plaintiff*