<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARIELLE FLETCHER,<br><br>_Plaintiff_,<br><br>v.<br><br>GATEWAY GROUP ONE, BENJAMIN OKOLI, STATE OF NEW JERSEY, COUNTY OF ESSEX, CITY OF NEWARK, CITY OF ELIZABETH, EMERSON RUSSELL MAINTENANCE COMPANY AVIATION, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY,<br><br>_Defendants_. | Civil No.: 20-cv-3413 (KSH) (CLW)<br><br><br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

I. **Introduction**

Plaintiff Arielle Fletcher alleges she was subjected to discrimination and retaliation while employed by defendant Gateway Group One and has asserted claims against Gateway and a host of other defendants. Before the Court are the City of Elizabeth's motion for summary judgment (D.E. 12) and the motions to dismiss filed by Gateway, the City of Newark, Essex County, and the Port Authority of New York and New Jersey (D.E. 17, 18, 30, 38). The motions are decided without oral argument pursuant to L. Civ. R. 78.1(b).

II. **Background**

The amended complaint alleges as follows. Fletcher worked at Newark Liberty International Airport as a customer sales representative for Gateway,[1] a company that describes

---

[1] Fletcher also alleges that Gateway "may also be doing business as or under" the name Emerson Russell Maintenance Company Aviation, or ERMC, and that ERMC is "an agent or partner or alias of" Gateway Group One. (_Id._ ¶¶ 3, 17.) Gateway states that it was improperly sued as

1

itself in the employee handbook accompanying the complaint as a "provider[] of security and frontline customer services." (D.E. 4, Am. Compl. ¶¶ 32, 35; D.E. 1-1, at 2.) She alleges that defendant Benjamin Okoli subjected her to "unwelcomed and forced offensive touching, grabbing, and unwanted mouth contact," and made "unwelcomed lewd, sexual and aggressive comments." (*Id.* ¶ 4.) Fletcher met with a Port Authority supervisor on April 5, 2019, "advised him of her fears," and was directed to speak with human resources. (*Id.* ¶ 20.) It is unclear whether this conversation pertained to Okoli, as she alleges that he started harassing her around June 5, 2019, two months later. (*Id.* ¶ 56.) At that point, Fletcher alleges, Okoli began harassing her and she "was afraid to report" him because "he was the Supervisor, who held positions of power and authority at work and in the Union." (*Id.*) Fletcher contends his conduct continued after she "told him to 'Stop' invading her personal space" and that he did this frequently while "yelling at [her] in an angry and threatening manner." (*Id.*)

Fletcher also alleges that Okoli physically attacked her around June 21, 2019, after she "approached [him] about his abusive behavior." (*Id.* ¶¶ 5, 57.)[2] She alleges she attempted to speak with her managers but they "refused to listen to [her]," and that she provided a written statement to one of them. (*Id.* ¶¶ 21, 23, 60, 62.) She also asserts that she contacted a human resources manager and provided a written statement, but the person "failed (or refused) to respond to her." (*Id.* ¶¶ 22, 27, 61, 66.) She also made an oral statement to a union delegate, who "expressly refused to assist [her]," a written statement to other union representatives, and a

---

"Gateway Group One" and that the proper company name is "Gateway Security Inc." (D.E. 17-1 ¶ 1; D.E. 17-5, at 1.) This defendant (including ERMC) is referred to herein as "Gateway."

[2] The date of the alleged attack is unclear from the complaint, which alternately describes it as taking place on June 22, 2019 (*id.* ¶ 5) or June 21, 2019 (*id.* ¶ 57). Given that the steps Fletcher alleges she took to report it to her employer and elsewhere are described as taking place on June 21, 2019 (*id.* ¶¶ 21-27, 60-66), this opinion uses the June 21 date.

written statement to a Newark Liberty International Airport police officer.  (*Id.* ¶¶ 24-26, 63-65.)
She also alleges that she filed a police report.  (*Id.* ¶¶ 5, 58.)  Two days after the alleged attack,
Fletcher's managers accused her of lying and "entirely refuted [her] account of the assault."  (*Id.*
¶ 67.)  Human resources "refused or failed to respond" to her written communications regarding
the alleged abuse and refused her requests for copies of her performance reviews and write-ups,
and, she contends, her employer failed to take corrective action.  (*Id.* ¶¶ 68-69.)  Ultimately, in
July 2019, Fletcher's employment was terminated.  (*See id.* ¶¶ 70, 104.)  She contends that in
addition to violating statutory law, this termination contravened Gateway's policies as set forth
in the employee handbook.  (*Id.* ¶¶ 71, 74-89; D.E. 1-1.)

Fletcher further alleges that she suffers from life-threatening seizures and that from
January 2019 to June 2019, she experienced multiple seizures while working, some requiring
transportation to a hospital by ambulance or hospital admission.  (*Id.* ¶¶ 33, 36-54.)  Her
managers assertedly prohibited her from taking her medication in the break room during break
time and "relegated [her] to the public bathroom, which was frequently filthy, unclean, and far
away" to take her pills.  (*Id.* ¶ 55.)  Separately, Fletcher asserts that she is "registered as a
survivor of [d]omestic violence."  (*Id.* ¶¶ 34, 59.)

Fletcher filed suit on March 30, 2020, naming Gateway and Okoli as defendants, along
with the state of New Jersey, Essex County, the City of Newark, and the City of Elizabeth.  (D.E.
1.)  Her basis for naming Newark and Elizabeth was their alleged partial ownership of the
airport.  The basis for naming the state and county is unclear, and the docket does not reflect that
the state was ever served with process.  On April 3, 2020, Fletcher filed the amended complaint,
which added the Port Authority as a defendant on the asserted basis that its "agents operate in
[the airport]" and it "exercises control over" the airport.  (Am. Compl. ¶ 18.)

Fletcher asserts claims under Title VII of the Civil Rights Act of 1964 for hostile work environment (count 1), retaliation (count 2), wrongful termination based on sex discrimination (count 3), wrongful termination based on race discrimination (count 4), and wrongful termination based on disability discrimination (count 5). Five motions are presently before the Court. Elizabeth has moved for summary judgment (D.E. 12), arguing that it does not own or operate Newark Liberty International Airport and has no connection to this matter or Fletcher's former employer, Gateway. Newark moves to dismiss for failure to state a claim, arguing the only basis for suit against it that is articulated in the complaint – partial ownership of the airport – does not give rise to a cognizable Title VII claim and that no employment relationship existed between it and Fletcher. (D.E. 18.) Gateway moves to dismiss for failure to exhaust administrative remedies, improper service of process, and failure to timely effectuate service. (D.E. 17.) Essex County moves to dismiss for failure to exhaust administrative remedies. (D.E. 30.) Finally, Port Authority moves to dismiss for failure to exhaust administrative remedies, failure to timely effectuate service, and on the basis that it was not Fletcher's employer. (D.E. 38.) Fletcher has opposed these motions.

## III. Discussion

### A. Administrative Exhaustion

Gateway, Essex County, and Port Authority seek dismissal for failure to exhaust administrative remedies. Fletcher has asserted her claims under Title VII, which, in 42 U.S.C. § 2000e-2(a)(1), prohibits employment discrimination on the basis of race, color, religion, sex, or national origin, and in 42 U.S.C. § 2000e-3(a), prohibits retaliation against those who assert rights under the statute. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019). A plaintiff bringing a claim under these statutory provisions "must comply with the procedural requirements

set forth in 42 U.S.C. § 2000e-5." *Williams v. E. Orange Community Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010).[3]  Among these requirements are a time limit (180 days or 300 days, as set forth in the statute) to file a charge with the EEOC and another time limit (90 days) to file suit after receipt of right to sue letter. 42 U.S.C. § 2000e-5(e)(1), (f)(1).  *See also Davis*, 139 S. Ct. at 1846-47 (summarizing administrative exhaustion process for Title VII claims).

Because the purpose of the administrative exhaustion requirement is to allow the EEOC an opportunity to settle disputes using "conference, conciliation, and persuasion," thereby "avoiding unnecessary action in court," an ensuing lawsuit is limited to claims within the scope of the initial charge to the EEOC.  *Williams*, 396 F. App'x at 897. *See also Simko v. United States Steel*, 992 F.3d 198, 207 (3d Cir. 2021) (observing that "a fundamental aim of the pre-suit requirements is to 'give prompt notice to the employer' and 'encourage the prompt processing of all charges of employment discrimination'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 121 (2002)).

Fletcher has alleged that she complied with administrative exhaustion requirements. (Am. Compl. ¶ 19 ("Plaintiff has complied with all administrative procedures that are conditions precedent to the filing of the instant matter and, as a result, has exhausted all remedies available to her."); *see also id.* ¶ 30 ("Plaintiff has exhausted any and all administrative remedies available to her.").)  She also alleges that she "timely filed a Notice of Claim" with the state, Essex County, and Newark.  (*Id.* ¶ 19; *see also id.* ¶ 29.)[4]  It is unclear whether the latter assertion

---

[3] To the extent plaintiff asserts a claim for disability discrimination in count 5, disability is not a protected class under Title VII. Even if plaintiff intended to plead this claim under the Americans with Disabilities Act, the same exhaustion requirements would apply.  *Simko v. United States Steel*, 992 F.3d 198, 204 (3d Cir. 2021); *Williams*, 396 F. App'x at 897; *see also* 42 U.S.C. § 12117(a).

[4] Despite the reference in paragraph 19 to an exhibit, no such exhibit accompanied either the original or amended complaint.

reflects a belief, which would be erroneous, that a notice of claim made to these entities would satisfy the exhaustion requirements under Title VII, and there is no mention in the amended complaint of any charge having been made to the EEOC or receipt of a right-to-sue letter.

Although satisfaction with the exhaustion requirements is a prerequisite to commencing a Title VII suit in court and must be enforced if, as is the case here, a party has properly and timely raised the issue of plaintiff's noncompliance, *see Davis*, 139 S. Ct. at 1846, 1849, 1851, at the pleadings stage it is sufficient for a plaintiff to generally allege that all conditions precedent have been performed. Fed. R. Civ. P. 9(c); *accord Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 111-12 (3d Cir. 2014) (concluding that the pleading of conditions precedent – there, exhaustion of administrative remedies under the Age Discrimination in Employment Act – need not meet the pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *Hong Zhuang v. EMD Performance Materials Corp.*, 2018 WL 3814282, at *6 (D.N.J. Aug. 10, 2018) (Martinotti, J.) (same, in Title VII case). Accordingly, the Court declines to dismiss the claims at this stage for failure to exhaust administrative remedies.

This does not mean that Fletcher has demonstrated that she *in fact* complied with the exhaustion requirements, nor does it mean that she complied with those requirements as to each defendant and each claim and did so in a timely manner. But the issue cannot be resolved now. In response to Gateway's motion to dismiss, Fletcher offered no response whatsoever to Gateway's administrative exhaustion argument. (*See generally* D.E. 23; *see also* D.E. 26, at 1.) In response to Essex County's and Port Authority's motions to dismiss, Fletcher revealed that she had purportedly sent a series of charges to the EEOC beginning around August 1, 2019, and that the EEOC allegedly sent a right to sue letter, albeit with the wrong information for the complainant, employer, and attorney, around September 5, 2020. (*See* D.E. 34, at 6-7.; D.E. 40,

at 5.) These submissions came after briefing was concluded on the motions filed by Elizabeth, Newark, and Gateway. After the briefing was closed on all of the motions presently before the Court, Fletcher's counsel filed a letter attaching a right to sue letter dated April 2, 2021, that was addressed to Fletcher, with copy to Gateway. (D.E. 45, Ex. A.) In view of the circumscribed universe of documents the Court may consider in deciding a motion to dismiss,[5] and because defendants have had no opportunity to respond to or even address the April 2 document plaintiff submitted after the close of briefing, the Court will not determine on the present record whether Fletcher properly exhausted her administrative remedies. Nevertheless, given the effect of a failure to properly exhaust, focused discovery followed by summary judgment motion practice directed to this issue may be appropriate, at the discretion of the Magistrate Judge. *Accord DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 593 (D.N.J. 2015) (McNulty, J.).

### B. Service

Two defendants, Gateway and Port Authority, have sought dismissal on grounds that the service of process made upon them was either untimely or improper. The Federal Rules of Civil Procedure set forth requirements for service of process, both with respect to the manner of service and the time in which it must be accomplished. Relevant here, Rule 4 requires the plaintiff to have the complaint and summons served upon the defendants within 90 days after the complaint is filed. Fed. R. Civ. P. 4(c)(1), (m). The rule also sets forth how service is properly

---

[5] *See, e.g.*, *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

accomplished on various types of defendants.  *See, e.g.*, Fed. R. Civ. P. 4(e), (h) (addressing how service is to be made on individuals and corporations, respectively).

Under Rule 4(m), if a plaintiff fails to timely serve a defendant, the Court must dismiss the action without prejudice against that defendant, or, alternatively, order that service be made within a specified time.  If the plaintiff shows good cause for the failure to timely serve, "the court must extend the period for an appropriate time."  *Id.*  Thus, a showing of good cause makes extension (rather than dismissal) mandatory.  *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998).  Even absent good cause, "the court may still grant the extension in the sound exercise of its discretion."  *Id.*

Port Authority argues that dismissal under Rule 4(m) is appropriate because although the amended complaint naming it as a defendant was filed on April 3, 2020, it was not served until December 9, 2020 – 250 days after the filing, and thus well beyond the 90-day deadline.  In opposition, Fletcher does not acknowledge the untimeliness of her service of process on Port Authority, instead contending that service was properly made and that in any event there had been no prejudice to Port Authority because it had actual notice of the suit and appeared in the action.  (*See* D.E. 40.)[6]  The "primary focus" of the good cause inquiry "is on the plaintiff's reasons for not complying with the time limit in the first place."  *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)).  "Good cause" is measured by an "excusable neglect" test, which requires a showing of good faith by the party seeking the extension and "'some reasonable basis'" for not complying with the time limit.  *Id.* (citation

_____

[6] Plaintiff cites "Federal Rule of Civil Procedure § 2334(a)" in support of her contention that service was proper.  (D.E. 40.)  There is no such rule, and to the extent the intended reference is to 18 U.S.C. § 2334(a), that provision applies to suits under 18 U.S.C. § 2333 and has no applicability here.

omitted). Here, Fletcher has offered no reason whatsoever for not complying with the time limit and instead insists that service was proper notwithstanding the unrefuted record evidence that it was untimely. (*See* D.E. 38-2, Lee Cert. ¶ 2 (certifying that Port Authority was served on December 9, 2020).) Although she also contends, essentially, "no harm, no foul" because Port Authority did ultimately get notice of the suit, appeared in the action, and thereby had an opportunity to be heard in accordance with due process requirements, "absence of prejudice alone can never constitute good cause to excuse late service." *Id.* Fletcher has not shown good cause.

But, as noted earlier, a discretionary extension may be appropriate even absent good cause. *McCurdy*, 157 F.3d at 196. Pertinent considerations include "actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying cause of action; the conduct of the defendant; and whether the plaintiff is represented by counsel," as well as "any other factor that may be relevant when deciding whether to grant an extension or dismiss the complaint." *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009). Here, Port Authority did get notice of the suit, as evidenced by its appearance and the pending motion. However, there is no indication it had notice before it was actually served, such as through settlement negotiations or other pre-service contact. *Cf. Jumpp v. Jenkins*, 2010 WL 715678, at *11 (D.N.J. Mar. 1, 2010) (Kugler, J.) (noting that the record "strongly suggest[ed] that [defendant] . . . had actual notice of this action well-within the service period").[7] Fletcher is represented by counsel, and when the Court issued a call for dismissal in August 2020 because

---

[7] It is unclear how Fletcher's transportation to the emergency room from the airport on "countless occasions" would have put Port Authority on notice of the claims now asserted against it. (D.E. 40, at 12.)

no proof of timely service had been filed, Fletcher's attorney sought and obtained an extension of time to serve several defendants without any mention of Port Authority. (*See* D.E. 5, 7, 8.)

Although these facts disfavor a discretionary extension, others point in the opposite direction. There is no indication that Port Authority's ability to defend on the merits has been affected by Fletcher's service approximately five months beyond the deadline in the rule. *See Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997) ("Delay may damage a defendant's ability to defend on the merits," such as through a consequent unavailability of witnesses or evidence). No scheduling order has yet been entered, and this litigation has not progressed beyond the threshold motion practice presently before the Court. Also, although the issue of administrative exhaustion must be explored further (as explained previously), Fletcher has cited right to sue letters received in or around September 2020 or early April 2021. Because Title VII requires civil actions to be filed no later than 90 days after receipt of a right to sue letter, assuming *arguendo* that the dates Fletcher has cited are correct, dismissing her claims against Port Authority without prejudice would be tantamount to a with-prejudice dismissal (if the letter was received in September 2020) or would soon have that effect (if the letter was received in April 2021). Although the running of the statute of limitations does not require the discretionary grant of an extension, it is a factor supporting that result. *Boley*, 123 F.3d at 759.[8] Accordingly, the Court will deny Port Authority's motion to dismiss under Rule 4(m) and grants Fletcher an extension of time *nunc pro tunc* to serve Port Authority. Because that service has already been

---

[8] The 180-day period within which a plaintiff must file a charge with the EEOC and the 90-day time limit to file a civil suit following receipt of a right to sue letter from the EEOC are considered statutes of limitation. *See Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001).

effectuated and Port Authority does not argue that service was improper other than with respect to its untimeliness, service is deemed completed with respect to it.

For its part, Gateway argues that it was not properly served and that the claims against it should be dismissed because Fletcher's failure to effectuate proper service deprives the Court of personal jurisdiction over it. Gateway contends that the person upon whom Fletcher claims to have made service, a "Ms. Kirby," was never employed by Gateway and that even if the person was an employee, Fletcher has not shown that she was authorized to accept service of process.

Under Fed. R. Civ. P. 12(b)(5), a defendant may move to dismiss for insufficient service of process. It is plaintiff's burden to show that service was sufficient. *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) ("[T]he party asserting the validity of service bears the burden of proof on that issue."). Moreover, proper service of process is a prerequisite to the Court's exercise of personal jurisdiction over a defendant. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991).

Under Rule 4, a corporation is to be served by (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," Fed. R. Civ. P. 4(h)(1)(A), (e)(1), which, here, means following New Jersey law, or (2) "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant," Fed. R. Civ. P. 4(h)(1)(B). Under New Jersey law, service on a corporation is made by:

> serving a copy of the summons and complaint . . . on any officer, director, trustee
> or managing or general agent, or any person authorized by appointment or by law
> to receive service of process on behalf of the corporation, or on a person at the
> registered office of the corporation in charge thereof, or, if service cannot be

made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties . . . .

N.J. Ct. R. 4:4-4(a)(6).

Fletcher claims to have made service on Gateway through a process server that delivered a copy of the summons and complaint to a "Ms. Kirby," the "Custodian of Records," at 604-608 Market Street, in Newark, New Jersey.  (*See* D.E. 23-1, Aff. of Service.)  In response to Gateway's argument that no person of that name worked at the company, Fletcher argues that her counsel "is not a detective, nor is a process server," and that there is "nothing [p]laintiff can do" if the person supplied an incomplete or incorrect name.  (D.E. 23, at 4, 5.)  She also argues that due process was met as Gateway has appeared in this action, which she frames as indicating actual notice and a lack of prejudice.[9]

This argument fails to recognize that it is *plaintiff's* burden to prove the sufficiency of service, and that service must be made in the manner set forth in the rules, as discussed above. Fletcher makes no attempt to show how the person served, purportedly the custodian of records, qualifies as an appropriate person to receive service under any of the categories set forth in the rule.  Hiring a process server does not relieve a plaintiff of the responsibility to properly and timely serve a defendant, or of the burden to prove the validity of service when faced with a challenge.  For example, in *Gabros v. Shore Medical Center*, the plaintiff filed three proofs of service, each of which indicated that a process server had gone to the defendant's place of business and left copies of the summons and complaint with an administrative assistant and,

---

[9] To the extent Fletcher again relies on "Federal Rule of Civil Procedure § 2334(a)" and "18 U.S.C. § 2334(a)" as the basis for service being proper, as noted earlier, these provisions, which are interpreted as references to 18 U.S.C. § 2334(a), have no applicability here.

later, a risk manager.  724 F. App'x 119, 122 (3d Cir. 2018).  The Third Circuit concluded that

the district court properly dismissed plaintiff's claims without prejudice, as service was

improper:

> The record is bereft . . . of any evidence that either [person with whom the process
> server left the summons and complaint] was "an officer, a managing or general
> agent, or an[] . . . agent authorized . . . to receive service of process." Fed. R. Civ.
> P. 4(h)(1)(B). Nor is there any basis to conclude that either one was "in charge" of
> [defendant's] place of business and therefore a proper target of process under
> New Jersey Court Rule 4:4-4(a)(6), which the Federal Rules incorporate as a
> permissible method of service. *See* Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1).

*Gabros*, 724 F. App'x at 122; *see also West v. Am. Honda Motor Co.*, 2008 WL 4104683, at *4

(Aug. 28, 2008) (Hillman, J.) ("In order for service of process upon an agent to be effective, it

must be shown that the agent was actually appointed by the defendant for the specific purpose of

receiving process. . . . Mere acceptance is not enough to demonstrate an agency relationship for

purpose of service of process.").

Despite these deficiencies, however, "[t]he choice of remedy for improper service is

committed to the sound discretion of the District Court."  *Gabros*, 724 F. App'x at 122 (citing

*Umbenhauer v. Woog*, 969 F.2d 25, 28 (3d Cir. 1992)); *see also Woog*, 969 F.2d at 30 (court

may dismiss claims for failure to effect service or alternatively, quash the service of process,

though the latter should be done "when there exists a reasonable prospect that service may yet be

obtained").  Although concluding that Fletcher has not met her burden to prove the validity of

service on Gateway also means she has also not met the time limit for service in Rule 4(m), the

same factors that support a discretionary extension of time with respect to Port Authority also

support one here.[10]  This case is substantively in its early stages; no scheduling order has been

---

[10] There is no basis for a mandatory extension based on good cause.  As with Port Authority,
Fletcher has not shown excusable neglect, and, in her opposition to Gateway, insists service was
proper.

entered; there is no indication that Gateway's ability to defend has been negatively affected;[11] and dismissing without prejudice would in all likelihood function as a with-prejudice dismissal given the statute of limitations.

Accordingly, the Court will grant Fletcher a short extension of time within which to effectuate proper service of process on Gateway.  She shall properly effectuate service of the summons and amended complaint on Gateway within **10 days** and shall promptly thereafter file proof of service, or shall file within **10 days** a waiver of service signed by Gateway waiving additional service of process.

### C.  Failure to Plead Plausible Claim for Relief

Three defendants – Port Authority, Newark, and Elizabeth – have also argued that Fletcher has not asserted cognizable claims for relief against them.  These arguments, some of which are made under Fed. R. Civ. P. 12(b)(6) and one of which is made under Fed. R. Civ. P. 56, are addressed in turn.

### 1.  Port Authority

Port Authority seeks dismissal of the claims against it on the basis that it was not Fletcher's employer, and that the factual allegations against it – that it operates in or exercises control over the airport and that Fletcher told a Port Authority supervisor of her fears and he directed her to speak with human resources (Am. Compl. ¶¶ 18, 20) – are insufficient to state a cause of action against it.  Fletcher offers no opposition to this argument by Port Authority.

To withstand dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[11] Indeed, its motion to dismiss was filed in, and therefore it was necessarily on actual notice of this suit no later than, October 2020, just over three months after plaintiff's 90-day service deadline expired.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "plausibly" pled only if, based on the factual allegations pleaded, the court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

The Court agrees that the barebones allegations against Port Authority do not state a plausible claim for relief against it.  Among other deficiencies, the complaint identifies no employment relationship between Fletcher and Port Authority, and neither in the complaint nor in her briefing does Fletcher explain how the alleged operation or control by the Port Authority of the airport generally or her alleged conversation with a person who worked for Port Authority would give rise to or reflects a relationship between her and Port Authority that would subject the latter to liability.  *Cf., e.g.*, *See Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013) ("In order to state a Title VII claim, Covington must allege an employment relationship with the defendants.").   The most that can be gleaned from the amended complaint about the circumstances of Fletcher's employment is that she allegedly was a "customer sales representative" for a company, Gateway, that according to its employee handbook, provides "security and frontline customer services," and that in her role, she worked at Newark Liberty International Airport.[12]  Left unsaid is what, if any, connection exists between Port Authority and Gateway, or why Fletcher believes that Port Authority has any role in

---

[12] In evaluating a motion to dismiss, the Court may consider documents attached to the complaint.  *Lum v. Bank of Am.*, 361 F.3d at 221 n.3.  The employee handbook was attached as an exhibit to the original, but not amended, complaint, though it is extensively referenced in the amended complaint.  As such, the Court considers it for the limited purpose of noting how Gateway's business is described, as the amended complaint does not otherwise provide any information in that respect.

employment decisions or conditions affecting employees of Gateway. Even aside from the threshold issue of an employment relationship, the Court cannot plausibly infer from the factual allegations in the amended complaint, taking them as true for purposes of the motion, that Port Authority would be liable under the substantive elements of a Title VII claim. *See, e.g.*, *DeSantis v. New Jersey Transit*, 756 F. App'x 197, 202 (3d Cir. 2019) (discussing legal standards for Title VII claims).

The deficiencies in Fletcher's claims against Port Authority compel dismissal under Fed. R. Civ. P. 12(b)(6). Although she has not requested leave to amend, in civil rights cases district courts generally must permit an opportunity to amend unless it would be inequitable or futile to do so. *Thomas v. City of Philadelphia*, 779 F. App'x 99, 102 (3d Cir. 2019) (citing *Alston v. Parker*, 363 f.3d 229, 235 (3d Cir. 2004)). Fletcher will therefore be permitted to file an amended complaint that addresses the deficiencies in her claims against Port Authority within **21 days**. She is, however, cautioned that an amended pleading relying on the same factual allegations is subject to dismissal on futility grounds.

### 2. Newark

Newark has also moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the sole basis Fletcher has articulated for naming it as a defendant is its alleged ownership interest in Newark Liberty International Airport, a circumstance that does not give rise to liability under the statute she has invoked, 42 U.S.C. § 2000e-16(c). Indeed, the only allegation against Newark is that its ownership of the airport makes it "the relevant executive agency" and therefore a properly named defendant "pursuant to 28 U.S.C. § 2000e-16(c)." (Am. Compl. ¶ 12.)[13]

---

[13] Fletcher clearly intended to cite 42 U.S.C. § 2000e-16(c), as no "28 U.S.C. § 2000e-16(c)" exists.

As noted earlier, dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if a complaint fails to plead a plausible claim for relief, that is, if the factual allegations do not permit the Court to "'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678).

The amended complaint does not permit that inference against Newark, as the only legal basis Fletcher invokes for bringing a claim against the city is a statute that does not apply to it. As Newark correctly observes, 42 U.S.C. § 2000e-16 applies to employees of the federal government. It "prohibits employment discrimination by the Federal Government and sets out procedures applicable to claims by federal employees." *Fort Bend*, 139 S. Ct. at 1847 n.1; *see also Francis v. Mineta*, 505 F.3d 266, 271 (3d Cir. 2007) (statute extends Title VII's protection to federal employees). The prohibition on discrimination is set forth in subsection (a), which provides, in relevant part, that "[a]ll personnel actions affecting employees . . . in *executive agencies* as defined in [5 U.S.C. § 105] . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a) (emphasis added). An "executive agency" is defined as "an Executive department, a Government corporation, and an independent establishment." *See* 5 U.S.C. § 105. The 15 "executive departments" are listed in 5 U.S.C. § 101.[14] Newark is not among them.

Likewise, a "Government corporation" is a "corporation owned or controlled by the Government of the United States." 5 U.S.C. § 103(1). An "independent establishment" is "(1) an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department,

---

[14] They are the departments of State, Treasury, Defense, Justice, Interior, Agriculture, Commerce, Labor, Health and Human Services, Housing and Urban Development, Transportation, Energy, Educations, Veterans Affairs, and Homeland Security.

Government corporation, or part thereof, or part of an independent establishment; and (2) the Government Accountability Office." 5 U.S.C. § 104. Newark is neither of these; it is a municipality organized under the Optional Municipal Charter Law, or Faulkner Act, N.J.S.A. 40:69A-1 to -210. *Municipal Council v. James*, 183 N.J. 361 (2005); *see also Fraternal Order of Police, Newark Lodge No. 12 v. City of Newark*, 244 N.J. 75, 91 (2020).

In short, 42 U.S.C. § 2000e-16 simply does not apply to Newark and as such cannot be used to pursue a cause of action against the city. The specific provision Fletcher cites in the amended complaint, § 2000e-16(c), does not warrant otherwise; it simply provides that as a procedural matter when a federal employee files a civil action under the statute, the "head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c).

Fletcher seeks to avoid dismissal by arguing that Newark's ownership or partial ownership of the airport means that it may have some agreement with her former employer, Gateway, that would make it an "executive agency" under 42 U.S.C. § 2000e-16. (D.E. 24, at 3-4.) She contends that discovery may reveal the existence of such an agreement. But a plaintiff may not use discovery to determine whether she has a cause of action in the first place. *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) ("[W]ere we to reverse the dismissal here to allow for discovery, we would be permitting appellants to conduct a fishing expedition in order to find a cause of action. We cannot do so."). *See also Twombly*, 550 U.S. at 555 (factual allegations must be sufficient to "raise a right to relief above the speculative level"). Nor does she explain how any such agreement, if it existed, would transform Newark into an entity

covered by 42 U.S.C. § 2000e-16 or how it would be liable for the events alleged in the amended complaint even if the statute did apply.[15]

Dismissal is therefore warranted against Newark. Because the only basis for Fletcher's claims against Newark is a statute that does not apply to it, amendment would be futile, and Newark will be dismissed with prejudice.[16]

### 3. Elizabeth

Fletcher's sole allegation against Elizabeth is that it "partially-owns [sic] the [airport] and is, therefore, head of the relevant executive agency," and is "named as a defendant in this action pursuant to 28 U.S.C. § 2000e-16(c)."[17] (Am. Compl. ¶ 13.) The City of Elizabeth has filed a motion for summary judgment in lieu of answer, arguing that it does not own, maintain, or control Newark Liberty International Airport and has no connection to Gateway, Fletcher's current employer. (D.E. 12-4, at 4-5.) Fletcher counters that discovery is necessary to ascertain whether Elizabeth in fact has an ownership interest in the airport, and, as she did in opposing Newark's motion to dismiss, argues that Elizabeth may have a contract with Gateway that might qualify it as an "executive agency." (D.E. 27, at 1-2, 5.)

---

[15] In her opposition brief, Fletcher invokes 42 U.S.C. § 2000e-16(d) and (e) (different subsections than she pleaded in the amended complaint). (D.E. 24, at 4.) It is unclear how Newark would or could be liable for the challenged acts under these provisions.

[16] Newark also argues that Fletcher alleged no employment relationship between herself and the city, providing an additional basis for dismissal. (D.E. 18-1, at 13.) Fletcher counters that Newark has not proven the absence of such a relationship. (D.E. 24, at 5.) But Newark is not required to do so to warrant dismissal under Fed. R. Civ. P. 12(b)(6); rather, it is up to Fletcher, as the plaintiff, to plead factual allegations that, taken as true for purposes of the motion, permit a reasonable inference that the named defendant is liable for the asserted misconduct, which includes pleading facts that would support the required elements of the claim she has brought. She has not done so, but the Court's resolution makes it unnecessary to reach this alternative argument by Newark.

[17] The Court interprets this reference as one to 42 U.S.C. § 2000e-16(c).

Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] failure of proof on one of the essential elements of a claim renders both of these requirements met." *Pyfer v. Am. Mgmt. Servs. (In re Nat'l Pool Constr., Inc.)*, 598 F. App'x 841, 844 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Courts view facts and draw reasonable inferences in the non-movant's factor, *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014), and may not make credibility determinations, *Burton v. Teleflex, Inc.*, 707 F.3d 417, 428-29 (3d Cir. 2013). A factual dispute is "material" if it bears upon an essential element of the plaintiff's claim, and "genuine" if the evidence would allow a reasonable jury to find for the non-movant. *Blunt*, 767 F.3d at 265.

Much of the parties' briefing is dedicated to whether Elizabeth has any ownership rights in the airport, and to whether Fletcher has properly opposed Elizabeth's motion as a procedural matter. But there is a more fundamental problem with Fletcher's claim, and the Court need not look beyond the pleadings to address it: the only basis upon which she sues Elizabeth is 42 U.S.C. § 2000e-16, a statute that has no apparent applicability to this defendant. Like Newark, Elizabeth is governed under the Faulkner Act, *see We the People Comm. v. City of Elizabeth*, 325 N.J. Super. 329 (App. Div. 1999); it is not an "executive agency" within the meaning of § 2000e-16. And as with Newark, this deficiency in Fletcher's claims against Elizabeth means that Fletcher has incurably failed to plead a claim upon which relief can be granted against this defendant. It is unnecessary to consider the material outside the pleadings that Elizabeth submits in support of its motion because that material – pertaining to whether Elizabeth has ownership rights to the airport – is irrelevant to the question of whether Fletcher has even stated a cognizable claim against this defendant. Accordingly, the motion will be construed as one under

Fed. R. Civ. P. 12(b)(6), and will be granted.  Because amendment would be futile, the claims against Elizabeth will be dismissed with prejudice.

## IV.    Conclusion

For the reasons set forth above, the issue of administrative exhaustion, which was raised by defendants Gateway, Essex County, and Port Authority, must be developed further before the Court can properly determine whether Fletcher's claims are barred in whole or in part for failure to exhaust. The parties are directed to confer as to an approach for discovery on this issue and shall report to the Magistrate Judge, who may, in her discretion, set the parameters for such discovery and any related motion practice.  Accordingly, Essex County's motion to dismiss on administrative exhaustion grounds (D.E. 30) is denied without prejudice to renewal on an appropriate record.  Gateway's motion to dismiss (D.E. 17) and Port Authority's motion to dismiss (D.E. 38) insofar as they raise the issue of administrative exhaustion are likewise denied without prejudice to renewal on an appropriate record.

To the extent Gateway's motion also seeks dismissal for improper and untimely service of process, its motion is granted.  Fletcher shall properly effectuate service of the summons and amended complaint on Gateway within **10 days**, or shall file, within **10 days,** a waiver of further service of process signed by Gateway.

To the extent Port Authority's motion also seeks dismissal for untimely service of process, it is denied.  To the extent Port Authority seeks dismissal for failure to state a claim upon which relief can be granted, its motion is granted; **within 21 days,** Fletcher may file a second amended complaint addressing the deficiencies in her claims against Port Authority.

Finally, the amended complaint fails to plead a cognizable claim for relief against defendants Newark and Elizabeth, and amendment would be futile.  Accordingly, Newark's motion to dismiss (D.E. 18) is granted, and the amended complaint is dismissed with prejudice against Newark.  Elizabeth's motion for summary judgment (D.E. 12) is construed as a motion to dismiss, and is granted; the amended complaint is dismissed with prejudice against Elizabeth.

An appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: June 28, 2021