Joseph Rakofsky, Esq.
J.A. Rakofsky
Injury & Accident Law, LLC
P.O. Box 32250
Newark, NJ 07102
Tel. (888) 977-0090
*Attorney for Defendant and*
*Third-Party Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARIELLE FLETCHER,<br><br>*Plaintiff*<br><br>-against-<br><br>GATEWAY GROUP ONE,<br>BENJAMIN OKOLI,<br>STATE OF NEW JERSEY,<br>COUNTY OF ESSEX,<br>CITY OF NEWARK,<br>CITY OF ELIZABETH,<br>EMERSON RUSSELL<br>MAINTENANCE COMPANY AVIATION,<br>PORT AUTHORITY OF NEW YORK<br>AND NEW JERSEY<br><br>*Defendants*. | **BRIEF IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT, COUNTY OF ESSEX'S MOTION TO DISMISS**<br><br><br>CIVIL ACTION<br><br><br>Docket No. 2:20-cv-3413 |

Plaintiff, by and through her attorney, Joseph Rakofsky, Esq., pursuant to N.J.S.A. 2A:53A-27 and the cases cites herein, hereby files her *Opposition to Defendant, County of Essex's Motion to Dismiss*. In Support of its instant *Opposition*, Plaintiff respectfully represents as follows:

## STATEMENT OF FACTS

Plaintiff, Arielle Fletcher, has complied with all administrative procedures that are conditions precedent to the filing of the instant matter and, as a result, has exhausted all remedies available to her.

At approximately the time in which Complainant was attacked by Defendant, BENJAMIN OKOLI, Complainant met with her Union Delegate, Stafford. Plaintiff is female. Plaintiff's racial ethnicity is of African-American descent. After satisfying all of the employment requirements, Plaintiff began working for GATEWAY GROUP ONE, located at Newark Liberty International Airport in Newark, New Jersey.

Plaintiff suffers from a physical disability: life-threatening seizures. In addition, Plaintiff is registered as a survivor of Domestic Violence in both, New Jersey and Pennsylvania.

On or about January 14, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about January 21, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. At this time, she was transported to the hospital by ambulance.

On or about January 22, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about February 4, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about February 7, 2019 through February 9, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

On or about February 14, 2019 through February 16, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

On or about March 9, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about March 14, 2019 through March 16, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

On or about April 12, 2019 through April 14, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

On or about April 30, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about May 7, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about May 21, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about May 27, 2019 through May 30, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

On or about June 21, 2019, Plaintiff suffered a seizure. At this time, she was transported to the hospital by ambulance.

On or about June 25, 2019 through June 26, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE. As a result of the aforementioned seizures, Plaintiff was admitted to the Hospital.

On or about July 3, 2019, Plaintiff suffered a seizure. At this time, she was transported to the hospital by ambulance.

On or about July 19, 2019 through July 20, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about July 29, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about July 31, 2019, Plaintiff suffered a seizure, while working at GATEWAY GROUP ONE.

On or about April 5, 2019, Complainant met with Luis Thomas, Port Authority Supervisor, and advised him of her fears. At that time, he directed Complainant to speak with Human Resources.

On June 21, 2019, Plaintiff approached Defendant, BENJAMIN OKOLI, about his abusive behavior towards Plaintiff. At that time, again, Defendant,

BENJAMIN OKOLI, continued to be abusive and disrespectful. Only moments later Defendant, BENJAMIN OKOLI, assaulted Plaintiff.

Shortly after the assault, Plaintiff filed a Police Report with the Port Authority Police Department, which is designated as **Case # 19-007840**.

At that time, Defendant, BENJAMIN OKOLI, attacked Plaintiff even though she is registered as a survivor of Domestic Violence.

On or about June 21, 2019, Complainant attempted to speak with her Managers, Octavia Marino and Vera Gomez. However, both refused to listen to Complainant.

On or about June 21, 2019, Complainant provided a written statement to Human Resource Manager, Kenia Henriquez, advising Ms. Henriquez of her experience.

On or about June 21, 2019, Complainant provided a written statement to Manager, Octavia Marino, advising her of the attack perpetrated by Defendant, BENJAMIN OKOLI.

On or about June 21, 2019, Complainant provided an oral statement to Union Delegate Stafford Woods Jr. However, Stafford Woods Jr. expressly refused to assist Complainant.

On or about June 21, 2019, Complainant provided a written statement, detailing the attack perpetrated by Defendant, BENJAMIN OKOLI, to Newark Liberty International Airport Police Officer Reyes.

On or about June 21, 2019, Complainant provided a written statement to Union Representatives, Mickey Santiago and Mario Rivera, which described the attack perpetrated by Defendant, BENJAMIN OKOLI.

On June 21, 2019, Complainant made contact with Human Resources Services Kenia Henriquez. However, Kenia Henriquez failed (or refused) to respond to Complainant.

On or about August 1, 2019, the first Charge of Demand was sent to the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") in Newark, New Jersey. (See **Exhibit A**.)

However, the EEOC never acknowledged the Charge of Demand or responded in any manner.

Because the EEOC failed (or refused) to respond to the first Charge of Demand, on or about November 25, 2019, the second Charge of Demand was sent to the EEOC in Newark, New Jersey. (See **Exhibit B**.)

Because the EEOC failed (or refused) to respond to the first or second Charge of Demand, on or about January 29, 2020, the third Charge of Demand was sent to the EEOC in Washington, D.C. (See **Exhibit C**.)

On January 31, 2020, COVID-19 was declared a public health emergency under the Public Health Service Act by the Federal Government.

Plaintiff and her counsel have been unable to meet since January 2020.

On March 9, 2020, under Executive Order No. 103 (2020), the State of New Jersey declared both a Public Health Emergency and a State of Emergency.

On or about September 5, 2020, the EEOC apparently sent a "Right to Sue" letter to Plaintiff, which listed the incorrect caption.

Plaintiff's counsel called the EEOC many times to obtain a corrected "Right to Sue" letter, but, perhaps, as a result of COVID-19, it never returned his phone calls.

Further, after sending the "Right to Sue" letter, the EEOC never sent any additional communications, either to Plaintiff or Plaintiff's counsel, which would have addressed its position with respect to the instant controversy. Thus, it is apparent that, while the EEOC included the incorrect caption on its letter to Plaintiff, it intended to provide consent for the instant lawsuit.

## STANDARD OF REVIEW

Under Title VII, a complaining employee cannot institute suit directly in federal district court; rather, he or she must first file a charge of discrimination with the EEOC. 42 U.S.C.A. §§ 2000e-5(b), (c), (e); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48-49, 94 S.Ct. 1011, 1019-20, 39 L.Ed.2d 147, 158 (1974), 415 U.S. at 47, 94 S.Ct. at 1019, 39 L.Ed.2d at 157. "The complainant must then await either the outcome of the EEOC investigation, or the expiration of 180 days, before being given notice of the right to sue in federal district court. 42 U.S.C.A. §§ 2000e-5(b), (c), (e). On receipt of the notice of the right to sue, the plaintiff has ninety (90) days in which to file suit. 42 U.S.C.A. § 2000e-5(b). Title VII's exhaustion-of-administrative-remedies requirement is an essential component of the federal statutory scheme

because it provides the EEOC the first opportunity to investigate discriminatory work practices and enables the EEOC to perform its statutory role of obtaining voluntary compliance and promoting conciliatory efforts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81, 109 S.Ct. 2363, 2374-2375, 105 L.Ed.2d 132, 153 (1989)."

"The Code of Federal Regulations enumerates the powers vested in the EEOC to investigate claims of discrimination. C.F.R. §§ 1601.15-.17. The EEOC may investigate the complainant's charges and require the complainant to submit a statement detailing the practices alleged to be unlawful and the harm he or she has suffered. C.F.R. § 1601.15. The EEOC may also convene a fact-finding conference with the parties in order to define the issues and ascertain whether there exists a basis for a negotiated settlement of the charge. Ibid. The EEOC is also empowered to issue subpoenas and call witnesses. C.F.R. §§ 1601.16-.17. Complainants have no right to a formal hearing and the EEOC has no power to fashion remedies or enforce its determinations."

"**<u>A complainant has the right to sue regardless</u>** of whether or not the EEOC finds reasonable cause to support his or her allegations of discrimination. See C.F.R. § 1601.19 (providing that the EEOC shall inform complainant who received a "no cause determination" of his or her right to sue in district court); C.F.R. § 1601.28(b) (providing that the EEOC shall issue notice of right to sue to complainant who received a "reasonable cause" determination). The consequences of a "reasonable cause" determination by the EEOC are that the agency may then try to obtain voluntary compliance by the offending employer, to effect a conciliation between the

parties, or to institute suit itself against the employer. 42 U.S.C.A. §§ 2000e-5(b), (f). Although the EEOC may, on its own initiative, reconsider its determinations, C.F.R. §§ 1601.19, .21, parties have no right to appeal an EEOC determination. See Georator Corp. v. E.E.O.C., 592 F.2d 765 (4th Cir.1979). **The complainant retains the right to a de novo trial in the District court** on the merits of his or her Title VII claim, regardless of whether or not the EEOC concludes that "reasonable cause" exists to support the allegations of employment discrimination. See *Alexander*, supra, 415 U.S. at 48 n. 8, 94 S.Ct. at 1019 n. 8, 39 L.Ed.2d at 158 n. 8 (noting that "an individual's cause of action is not barred by a Commission finding of no reasonable cause to believe that the Act has been violated"); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668, 676 (1973) (holding that an EEOC finding of no-probable-cause does not restrict an individual's right to a de novo trial on the merits particularly "in view of the large volume of complaints before the Commission and the non-adversarial character of many of its proceedings")."

"EEOC determinations are generally admissible at subsequent trials, absent a showing that a specific finding is particularly untrustworthy. *Abrams v. Lightolier*, Inc., 841 F. Supp. 584, 592 (D.N.J. 1994), aff'd, 50 F.3d 1204 (3d Cir.1995). District courts, though, retain the discretion to exclude EEOC determinations if the courts conclude that the probative value of the agency reports are substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403; *Walton v. Eaton Corp.*, 563 F.2d 66, 75 (3d Cir.1977); accord *Cortes v. Maxus Exploration Co.*, 977 F.2d 195 (5th Cir.1992). When admitted at trial, an EEOC determination carries no precedential

value. See *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1500 (9th Cir.1986) ("A finding of probable cause does not suggest to the jury that the EEOC has already determined that there has been a violation. Rather it suggests that preliminarily there is reason to believe that a violation has taken place."); *E.E.O.C. v. Chesapeake & Ohio Ry. Co.*, 577 F.2d 229, 232 (4th Cir.1978) ("The reasonable cause determination is not designed to adjudicate an employer's alleged violations of the Act but to notify an employer of the commission's finding and to provide common ground for conciliation.")."

Constitutional due process assures that an individual will only be subjected to the jurisdiction of a court where the maintenance of a lawsuit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted). Personal jurisdiction is "a matter of individual liberty" because due process protects the individual's right to be subject only to lawful power. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) (plurality opinion) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

The Due Process Clause requires that deprivation of life, liberty or property by adjudication be preceded by notice and an opportunity for a hearing. "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U. S. 385, 394. Process "may be served in any district where the defendant resides, is found, or has an agent...." 18 U.S.C § 2334(a). However,

"**Personal service has not in all circumstances been regarded as indispensable** to the process due to residents… (emphasis added)" *Mullane v. Central Hanover Bank & Trust Co.*, 339 US 306 - Supreme Court (1950).

The doctrine of Due Process is intended to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U. S. 457; *Grannis v. Ordean*, 234 U. S. 385; *Priest v. Las Vegas*, 232 U. S. 604; *Roller v. Holly*, 176 U. S. 398. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean*, supra, and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly*, supra, and cf. *Goodrich v. Ferris*, 214 U. S. 71. But if with due regard for the practicalities and peculiarities of the case these conditions <u>are reasonably met</u>, such constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." *American Land Co. v. Zeiss*, 219 U. S. 47, 67; and see *Blinn v. Nelson*, 222 U. S. 1, 7.

## PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES WITH RESPECT TO HER TITLE VII CLAIMS, 42 U.S.C. § 2000e–5

Between August 5, 2019, when Plaintiff filed her first (of three) notices of Charge of Demand with the EEOC and September 5, 2020, when the EEOC finally responded, thirteen months had already passed. This is approximately three hundred eighty-five (385) days, or more than 200 days longer than the Plaintiff was

required to wait. Accordingly, Plaintiff had (and has) the right to sue in federal district court at the expiration of 180 days. 42 U.S.C.A. §§ 2000e-5(b), (c), (e).

Here, Plaintiff patiently waited for the outcome of the EEOC investigation, which took much longer than any reasonable investigation should take. As previously mentioned, on or about August 1, 2019, the first Charge of Demand was sent to the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") in Newark, New Jersey. (See **Exhibit A**.) However, the EEOC never acknowledged the Charge of Demand or responded in any manner.

Because the EEOC failed (or refused) to respond to the first Charge of Demand, on or about November 25, 2019, the second Charge of Demand was sent to the EEOC in Newark, New Jersey. (See **Exhibit B**.) Because the EEOC failed (or refused) to respond to the first or second Charge of Demand, on or about January 29, 2020, the third Charge of Demand was sent to the EEOC in Washington, D.C. (See **Exhibit C**.)

Moreover, the EEOC waited until September 5, 2020 to notify Plaintiff of her Right to Sue. After dispatching such notice, it failed to communicate any further with either Plaintiff or her counsel.

While Title VII's exhaustion-of-administrative-remedies requirement is an essential component of the federal statutory scheme it is important only because it provides the EEOC with the first opportunity to investigate. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81, 109 S.Ct. 2363, 2374-2375, 105 L.Ed.2d 132, 153 (1989). However, if the EEOC should investigate in an ineffective manner, or,

if, in the alternative, it completely fails to investigate, the EEOC does not have the right to preclude Plaintiff from filing a lawsuit after 180 days. After all, the EEOC's right to investigate is merely for a period of 180 days, not forever.

Upon information and belief, on or about September 5, 2020, Plaintiff received a "Right to Sue" letter from the EEOC. While the EEOC letter was sent to Plaintiff, ostensibly, for the purpose of filing a lawsuit, apparently, the EEOC submitted a "Right to Sue" letter with a different caption. It is important to recognize that, apparently, after sending the "Right to Sue" letter to Plaintiff, the EEOC never sent any additional communications, either to Plaintiff or Plaintiff's counsel, which would have addressed its position with respect to the instant controversy. It was apparent that, while the EEOC included the incorrect caption on its letter to Plaintiff, it intended to provide consent for the instant lawsuit.

Nevertheless, regardless of whether it provided its consent, as previously mentioned, Plaintiff had (and has) the right to sue in federal district court at the expiration of 180 days. 42 U.S.C.A. §§ 2000e-5(b), (c), (e).

While, it would appear, due to COVID-19, certain employees for the EEOC were either overwhelmed or were no longer working, no EEOC agent communicated with Plaintiff or her counsel subsequent to providing its September 5, 2020 "Right to Sue" letter.

In addition, "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U. S. 385, 394.

Here, Plaintiff properly complied with all administrative procedures that are conditions precedent to the filing of the instant matter. Thus, pursuant to *International Shoe*, requiring Defendant, County of Essex, to litigate the instant matter, given that it was duly and properly served, does not offend "traditional notions of fair play and substantial justice."

### THE AMENDED COMPLAINT CLEARLY DEMONSTRATES THAT ESSEX COUNTY EXERCISES CONTROL OVER NEWARK LIBERTY INTERNATIONAL AIRPORT, WHICH IS WHERE THE UNLAWFUL ACTIVITY OCCURRED

In the Amended Complaint, Plaintiff stated, "The Plaintiff has timely filed a Notice of Claim with the State of New Jersey, County of Essex and City of Newark." Accordingly, Defendant, County of Essex was timely put on Notice of Plaintiff's claim. Further, counsel for Defendant, County of Essex, does not deny that it was timely put on notice of Plaintiff's claim. Last, this Honorable Court must take judicial notice that Newark International Liberty Airport is controlled in part by Defendant, County of Essex. Under the doctrine of *Respondeat Superior*, Defendant, County of Essex, is vicariously liable for the injuries caused by its agent, Defendant, Gateway Group One. Therefore, Defendant, County of Essex's instant motion must be denied in its entirety.

### GOOD CAUSE EXSITS FOR THIS COURT TO ALLOW PLAINTFF ACCESS TO COURT

*Pro se* litigants, as well as those represented by counsel, are entitled to meaningful access to the courts. See *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Wolff*

v. *McDonnell*, 418 U.S. 539, 579 (1974); *Ross v. Moffitt*, 417 U.S. 600, 612-15 (1974); *Johnson v. Avery*, 393 U.S. 483, 485 (1969).

Sufficient access to the courts, is a right protected by the Due Process Clause of the Fourteenth Amendment. See *Wolff*, 418 U.S. at 579-80; *Corpus v. Estelle*, 409 F. Supp. 1090, 1097 (S.D. Tex. 1975), aff'd, 542 F.2d 573 (5th Cir. 1976); *Potuto, The Right of Prisoner Access: Does Bounds Have Bounds?*, 53 Ind. L.J. 207, 215-19 (1977-78); Note*, Prisoners' Rights- Failure to Provide Adequate Law Libraries Denies Inmates' Right of Access to the Courts,* 26 U. Kan. L. Rev. 636, 643-44 (1978).

Sufficient access to the courts is equally a fundamental right protected by the First Amendment, which guarantees to all persons use of the judicial process to redress alleged grievances. See *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (right to petition Government for redress of grievances); *NAACP v. Button*, 371 U.S. 415, 428-29 (1963)(same), *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974); *Johnson v. Avery*, 393 U.S. 483, 488 (1969).

The right to present evidence is, of course, essential to the fair hearing required by the Due Process Clause. See *Baltimore & Ohio R. Co.* v. *United States,* 298 U. S. 349, 368-369 (1936).

Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment, even in the civil context at issue here, See, e. g., *Richardson v. Belcher*, 404 U. S. 78, 80-81 (1971); *Richardson v. Perales*, 402 U. S. 389, 401-402 (1971); *Flemming v. Nestor*, 363 U. S. 603, 611 (1960).

The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U. S. 123, 168 (1951) (Frankfurter, J., concurring).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U. S. 545, 552 (1965). See G*rannis v. Ordean*, 234 U. S. 385, 394 (1914); *Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). The right to notice and the opportunity to be heard "must be granted at a meaningful time." *Fuentes,* 407 U.S. at 81, 92 S.Ct. at 1994; *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

Relevant to the instant suit, Plaintiff has exhausted her administrative remedies. Accordingly, the EEOC was provided with more than the 180 days to which it was (and is) entitled. Thus, at this time, Plaintiff is entitled to litigate the instant matter in federal district court, pursuant to 42 U.S.C.A. §§ 2000e-5(b), (c), (e).

## SUBSTANTIAL COMPLIANCE

The equitable doctrine of substantial compliance has deep roots in English common law, *Neil v. Morgan,* 1862 WL 3359, at *3 (Ill. 1862), and has received repeated recognition in the New Jersey Supreme Court's own cases (*McCarty v. Boulevard Comm'rs of Hudson Co.*, 91 N.J.L. 137, 142, 106 A. 219 (Sup.Ct. 1918), aff'd, 92 N.J.L. 519, 106 A. 891 (E. A. 1918); *Travis Highlands*, 136

N.J.L. 199, 202, 55 A.2d 109 (Sup.Ct. 1947) as well as in cases elsewhere. See *Ray v. City of Birmingham*, 275 Ala. 332, 154 So.2d 751, 752-753 (1963); *Burmek v. Miller Brewing Co.*, 2 Wis.2d 330, 86 N.W.2d 629, 630-631 (1958); *Brickell v. Kansas City, Mo.*, 364 Mo. 679, 265 S.W.2d 342, 344-345 (1954); *Perry v. City of High Point*, 218 N.C. 714, 12 S.E.2d 275, 278 (1940); cf. *Giovanniello v. City of New York*, 163 Misc. 868, 296 N.Y.S. 886, 888 (Sup.Ct. 1936); *Knight v. City of New York*, 249 App. Div. 635, 291 N.Y.S. 291, 292 (1936). [*Zamel v. Port of N.Y. Auth.*, 56 N.J. 1, 5-6 (1970).]

Its purpose is to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose. *Anske v. Borough of Palisades Park*, 139 N.J. Super. 342, 347 (App.Div. 1976). It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims. *Zamel, supra*, 56 N.J. at 6.

Here, Plaintiff did everything she was required to do and more: Plaintiff filed three notices of Charge of Demand with the EEOC. As previously mentioned, between August 5, 2019, when Plaintiff filed her first (of three) notices of Charge of Demand with the EEOC and September 5, 2020, when the EEOC finally responded, thirteen months had already passed. This is approximately three hundred eighty-five (385) days, or more than 200 days longer than Plaintiff was required to wait. Accordingly, Plaintiff had (and has) the right to sue in federal district court at the expiration of 180 days. 42 U.S.C.A. §§ 2000e-5(b), (c), (e).

Plaintiff patiently waited for the outcome of the EEOC investigation, which took much longer than any reasonable investigation should take. As previously mentioned, on or about August 1, 2019, the first Charge of Demand was sent to the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") in Newark, New Jersey. (See **Exhibit A**.) However, the EEOC never acknowledged the Charge of Demand or responded in any manner.

Because the EEOC failed (or refused) to respond to the first Charge of Demand, on or about November 25, 2019, the second Charge of Demand was sent to the EEOC in Newark, New Jersey. (See **Exhibit B**.) Because the EEOC failed (or refused) to respond to the first or second Charge of Demand, on or about January 29, 2020, the third Charge of Demand was sent to the EEOC in Washington, D.C. (See **Exhibit C**.)

Moreover, the EEOC waited until September 5, 2020 to notify Plaintiff of her Right to Sue. After dispatching such notice, it failed to communicate any further with either Plaintiff or her counsel.

## LACK OF PREJUDICE TO THE DEFENDING PARTY

This Honorable Court's recognition that the EEOC has said nothing and done nothing, which might indicate that it was deprived of its right to investigate. Accordingly, it has not suffered and will not suffer any prejudice if it is required to remain in this litigation.

## RELAXATION

Defendant Rule 1:1-2 (Pressler & Verniero, Current N.J. COURT RULES, (GANN) 2017) states:

**1:1-2. Construction and Relaxation; References to Marriage, Spouse and Related Terms**

> The rules in Part I through Part VIII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes and, in civil cases, consistent with the case management/trial management guidelines set forth in Appendix XX of these rules. (*See* Exhibit J.)

Respectfully, in order to provide "fairness in administration" and a "just determination," the Court Rules should be applied to the instant matter. Respectfully, a "just determination" would require that this Court apply some degree of "Relaxation," as set forth by R. 1:1-2.

## CONCLUSION

Plaintiff hereby prays that this Honorable Court will allow its meritorious case to proceed to trial, or that this Honorable Court will allow and provide an oral hearing on the same prior to any adverse ruling, to avoid the miscarriage of justice that will otherwise result.

  /s: Joseph Rakofsky/  
Joseph Rakofsky, Esq. (034462009)  
P.O. Box 32250  
Newark, NJ 07102

Tel. 888.977.0090  
Fax. 888.977.4711  
*Attorney for Plaintiff*