**JOSEPH RAKOFSKY, ESQ.**
**INJURY & ACCIDENT LAW RAKOFSKY, LLC**
P.O. Box 32250
Newark, New Jersey 07102
Tel. (888)977-0090
Fax. (888)977-4711

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARIELLE FLETCHER<br><br>Plaintiff,<br><br>vs.<br><br>**GATEWAY GROUP ONE,**<br>**BENJAMIN OKOLI,**<br>**STATE OF NEW JERSEY,**<br>**COUNTY OF ESSEX,**<br>**CITY OF NEWARK,**<br>**CITY OF ELIZABETH,**<br>**EMERSON RUSSELL**<br>**MAINTENANCE COMPANY AVIATION**<br>**HARRISON AT HOLMDELL, LLC,**<br><br>Defendant(s) | Civ. No. 2:20-cv-3413-KSH-CLW<br><br>Honorable Katharine S. Hayden, U.S.D.J.<br><br>Honorable Cathy L. Waldor, U.S.M.J. |

**PLAINTIFF'S OPPOSITION TO DEFENDANT, PORT AUTHORITY OF NEW YORK AND NEW JERSEY'S MOTION TO DISMISS**

                                        **JOSEPH RAKOFSKY, ESQ.**
                                        *Attorney for*
                                        *Plaintiff, Arielle Fletcher*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………..2

SUMMARY OF ARGUMENT……………………………………………………..4

ARGUMENT………………………………………………………………….......5

       POINT I………………………………………………………………….9

       POINT II………………………………………………………………...10

CONCLUSION…………………………………………………………………..11

# **TABLE OF AUTHORITIES**

**Cases**

Associated Gen'l Contractors v. Metro. Water Dist.,
   159 F.3d 1178, 1181 (9th Cir. 1998) ........................................................................... 5

Banta v. United States,
   434 U. S. 819 (1977)……………………………………………………………..8

Bell Atlantic Corp. v. Twombly .
   550 U.S. 554 (2007) ..................................................................................................... 5

Bundy v. Jackson,
   205 U. S. App. D. C. 444, 641 F. 2d 934 (1981)……………………………….. 8

Burlington Industries, Inc. v. Ellerth,
   524 U. S. 742, 754 (1998)……………………………………………………6, 10

Cariddi v. Kansas City Chiefs Football Club,
   568 F. 2d 87, 88 (CA8 1977)……………………………………………………8

Compston v. Borden, Inc.,
   424 F. Supp. 157 (SD Ohio 1976)………………………………………………8

Firefighters Institute for Racial Equality v. St. Louis,
   549 F. 2d 506, 514-515 (CA8), cert. denied sub nom…………………………8

Gray v. Greyhound Lines, East,
   178 U. S. App. D. C. 91, 98, 545 F. 2d 169, 176 (1976)………………………8

Kendall v. Visa U.S.A., Inc.,
   518 F.3d 1042, 1047 (9th Cir. 2008) ......................................................................... 5

Meritor Savings Bank, FSB v. Vinson,
   477 U. S. 57, 72 (1986)……………………………………………………..6, 10

Padilla v. Yoo,
   678 F.3d 748, 757 (9th Cir. 2012) ............................................................................. 5

Rogers v. EEOC,
   454 F. 2d 234, 238 (CA5 1971), cert. denied, 406 U. S. 957 (1972)………….8

Watson v. Weeks,
   436 F.3d 1152, 1157 (9th Cir. 2006) ......................................................................... 5

**Statutes**

42 U.S.C. § 2000e-16(d) and (e) .................................................................................... 5

FED. R. CIV. P. 12(b)(6) .................................................................................................. 4

**Other Resources**

Restatement (Second) of Agency § 217 C……………………………………………….6, 7

Restatement (Second) of Torts § 909……………………………………………………….7

L. Schlueter & K. Redden, Punitive Damages, § 4.4(B)(2)(a), p. 181 (3d ed. 1995)……7

J. Ghiardi & J. Kircher, Punitive Damages: Law and Practice § 24.01 (1998)………7, 10

## **SUMMARY OF ARGUMENT**

Discovery is required in order to ascertain 1) whether The Port Authority of New York and New Jersey (hereinafter referred to as "Port Authority") is an agent of either Newark International Liberty Airport, or Defendant, Gateway Group One, or both and 2) whether the harassment that Plaintiff, Arielle Fletcher, suffered as a result of a hostile or offensive working environment, created by Port Authority, constituted a violation of Title VII.

Thus, Defendant, Port Authority, is improperly requesting this Honorable Court dismiss the Second Amended Complaint, notwithstanding that no exchange of discovery materials has occurred, whatsoever. The evidence already easily demonstrates Defendant, Port Authority, was complicit in enabling the unlawful activities to occur, which are the subject matter of the Second Amended Complaint. Therefore, because there exists a significant question and a genuine issue of material fact, this Honorable Court must deny Defendant, Port Authority's instant motion.

Further, Defendant, Port Authority, claims Plaintiff, Arielle Fletcher, failed to file a charge of discrimination against the Port Authority with the Equal Employment Opportunity Commission ("EEOC") prior to commencing this action. However, this point is patently false and has already been proved to be false repeatedly during the course of this litigation. This point, alone, should result in the denial of Defendant, Port Authority's instant motion.

Moreover, Defendant, Port Authority, does not dispute any of the alleged facts in the Second Amended Complaint. Further, Defendant, Port Authority, has not provided a scintilla of evidence showing the absence of an agency relationship.

Thus, Defendant, Port Authority, is requesting this Honorable Court dismiss the Second Amended Complaint without providing any discovery, which would prove it is liable for the damages caused by the unlawful activity described at length in the Second Amended Complaint because it is an agent for either (or both) Newark International Liberty Airport, and Defendant, Gateway Group One.

## ARGUMENT

### Legal Standards

Rule 12(b)(6), provides for dismissal of an action for "failure to state a claim upon which relief can be granted." See *Fed. R. Civ. P*. 12(b)(6). For a 12(b)(6) motion, "all well-pleaded allegations of material fact [are accepted as true] and construe[d] in the light most favorable to the non-moving party." *Padilla v. Yoo,* 678 F.3d 748, 757 (9th Cir. 2012). "[C]onclusory allegations of law and unwarranted inferences" are insufficient. *Associated Gen'l Contractors v. Metro.Water Dist.,* 159 F.3d 1178, 1181 (9th Cir. 1998). A complaint must state "evidentiary facts which, if true, will prove [the claim]," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008), otherwise it will be dismissed. See *Watson v. Weeks,* 436 F.3d 1152, 1157 (9th Cir. 2006).

Under Federal Rule of Civil Procedure 12(b)(6), a purported cause of action may be dismissed when the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the complaint must assert a plausible claim and set forth sufficient factual allegations to support the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). To satisfy the new standard under *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 570. A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id*. (*citing Twombly*, 550 U.S. at 556). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Therefore, if allegations are merely "conclusory," they are "not entitled to be assumed true." *Id*. Even if a court decides that the factual allegations are entitled to an assumption of truth, however, the facts must also "plausibly suggest an entitlement to relief." *Id.*

**Determining That Which Constitutes "Managerial Capacity" Is Fact-Intensive**

Title VII of the Civil Rights Act of 1964 states, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U. S. C. § 2000e-2(a)(1).

Congress has directed federal courts to interpret Title VII based on agency principles." *Burlington Industries, Inc. v. Ellerth*, 524 U. S. 742, 754 (1998); see also *Meritor Savings Bank, FSB v. Vinson*, 477 U. S. 57, 72 (1986) (noting that, in interpreting Title VII, "Congress wanted courts to look to agency principles for guidance"). Observing the limits on liability that these principles impose is especially important when interpreting the 1991 Act. See *Burlington Industries, Inc., supra*, at 763-764 ("[W]e are bound by our holding in *Meritor* that agency principles constrain the imposition of vicarious liability in cases of supervisory harassment").

The Court of Appeals held that an employer is absolutely liable for sexual harassment practiced by supervisory personnel, whether or not the employer knew or should have known about the misconduct. *Meritor Savings Bank, FSB* at 63. The Court of Appeals relied upon Title VII's definition of "employer" to include "any agent of such a person," 42 U. S. C. § 2000e(b), as well as on the EEOC Guidelines. The court held that a supervisor is an "agent" of his employer for Title VII purposes, even if he lacks authority to hire, fire, or promote, since "the mere existence — or even the appearance — of a significant degree of influence in vital job decisions gives any supervisor the opportunity to impose on employees." 243 U.S. App. D.C., at 332, 753 F. 2d, at 150.

Solely when contemplating punitive damages, the Restatement of Agency places strict limits on the extent to which an agent's misconduct may be imputed to the

principal:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

"(a) the principal authorized the doing and the manner of the act, or

"(b) the agent was unfit and the principal was reckless in employing him, or

"(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

"(d) the principal or a managerial agent of the principal ratified or approved the act." *Restatement (Second) of Agency* § 217 C.

See also *Restatement (Second) of Torts* § 909.

The Restatement provides that the **principal** (as opposed to an "Employer") may be liable for punitive damages if it authorizes or ratifies the agent's tortious act, **or** if it acts recklessly in employing the malfeasing agent. Further, at the conclusion of the litigation, when determining punitive damages, the Restatement also contemplates liability for punitive awards where an employee serving in a "managerial capacity" committed the wrong while "acting in the scope of employment." *Restatement (Second) of Agency, supra*, § 217 C; see also *Restatement (Second) of Torts, supra*, § 909 (same). "Unfortunately, no good definition of what constitutes a `managerial capacity' has been found," *Ghiardi*, Punitive Damages, § 24.05, at 14, and **determining whether an employee meets this description requires a fact-intensive inquiry** (emphasis added) *id.*, § 24.05; L. Schlueter & K. Redden, Punitive Damages, § 4.4(B)(2)(a), p. 181 (3d ed. 1995). The examples provided in the Restatement of Torts suggest that the agent must be "important," but perhaps need not be the employer's "top management, officers, or directors," to be acting "in a managerial capacity." *Ibid.*; see also *J. Ghiardi & J. Kircher, Punitive Damages: Law and Practice § 24.01 (1998)* at § 24.05 at 14; *Restatement (Second) of Torts, supra*, § 909,

- 7 -

at 468, Comment b and Illus. 3.

In *Bundy v. Jackson*, 205 U. S. App. D. C. 444, 641 F. 2d 934 (1981), the court stated that a violation of Title VII may be based upon either of two types of sexual harassment: 1) harassment that involves the conditioning of concrete employment benefits on sexual favors, and 2) harassment that, while not affecting economic benefits, creates a hostile or offensive working environment.

In *Rogers v. EEOC*, 454 F. 2d 234, 238 (CA5 1971), cert. denied, 406 U. S. 957 (1972) the Court stated, "One can readily envision working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers . . . ." Courts applied this principle to harassment based on race. (See *Firefighters Institute for Racial Equality v. St. Louis*, 549 F. 2d 506, 514-515 (CA8), cert. denied sub nom. *Banta v. United States*, 434 U. S. 819 (1977); *Gray v. Greyhound Lines, East*, 178 U. S. App. D. C. 91, 98, 545 F. 2d 169, 176 (1976), religion, e. g., *Compston v. Borden, Inc.*, 424 F. Supp. 157 (SD Ohio 1976), and national origin, e. g., *Cariddi v. Kansas City Chiefs Football Club*, 568 F. 2d 87, 88 (CA8 1977).

Last, even the EEOC Guidelines fully support the view that harassment leading to noneconomic injury can violate Title VII. In concluding that "hostile environment" harassment violates Title VII, the EEOC drew upon a substantial body of judicial decisions and EEOC precedent holding that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult. See generally 45 Fed. Reg. 74676 (1980).

Plaintiff, Arielle Fletcher's grievance is clearly based upon a hostile environment. Accordingly, this Honorable Court must consider whether a violation occurred; this point is well-settled. Thus, Discovery is required and Defendant, Port Authority's instant motion must be denied in its entirety.

## **Point I**

## **Plaintiff, Arielle Fletcher, Clearly Exhausted Her Administrative Remedies**

As per the Second Amended Complaint (see **Exhibit A and B**) filed on or about August 19, 2021, on or about August 1, 2019, the first Charge of Discrimination was sent to the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") in Newark, New Jersey. (See **Exhibit C**.) However, the EEOC never acknowledged the Charge of Demand or responded in any manner.

Because the EEOC failed (or refused) to respond to the first Charge of Discrimination, on or about November 25, 2019, the second Charge of Discrimination was sent to the EEOC in Newark, New Jersey. (See **Exhibit D**.)

Because the EEOC failed (or refused) to respond to the first or second Charge of Demand, on or about January 29, 2020, the third Charge of Demand was sent to the EEOC in Washington, D.C. (See **Exhibit E**.) This Honorable Court was first made aware of the aforementioned submissions to the EEOC on or about January 28, 2021. (See **Docket no. 36**.)

On or about April 2, 2021, Plaintiff received a second "Right to Sue" letter from U.S. Equal Employment Opportunity Commission, which was filed in the Docket for the instant matter on or about April 6, 2021 (which differed from the first "Right to Sue" letter, which was sent by the EEOC, which contained the incorrect name of the parties). (See **Exhibit F and Docket no. 45**.)

In addition, at or about that time, a copy of the aforementioned "Right to Sue" letter was served upon Defendant, GATEWAY GROUP ONE's agent, Kenia Henriquez. (See **Exhibit F**.) Accordingly, Plaintiff has exhausted any and all available administrative remedies available to her. Whereas Plaintiff has no other available remedy at all, Plaintiff, therefore, files the instant suit.

For the aforementioned reasons, Defendant, Port Authority's instant motion must be denied in its entirety.

**Point II**

**Defendant, Port Authority, Need Not Be an "Employer" in Order to Be Liable for the injuries sustained by Plaintiff, Arielle Fletcher.**

As previously mentioned, Congress has directed federal courts to interpret Title VII based on agency principles." *Burlington Industries, Inc.* at 754 and 763-764 ("[W]e are bound by our holding in *Meritor* that agency principles constrain the imposition of vicarious liability in cases of supervisory harassment").

In addition, it is sufficient that a **principal** (as opposed to an "Employer") may be found liable if it authorizes or ratifies the malfeasing agent's tortious act. In other words, the test for determining whether a principal (as opposed to an "Employer") is liable for punitive damages is disjunctive, not conjunctive (*i.e.*, 1) if it authorizes or ratifies the agent's tortious act, **or** 2) if it acts recklessly in employing the malfeasing agent). Thus, one need not be an "employer" in order to be vicariously liable; it is sufficient for one merely to be a "principal."

Last, as previously mentioned, "[N]o good definition of what constitutes a `managerial capacity' has been found," *Ghiardi*, Punitive Damages, § 24.05, at 14, and **determining whether an employee meets this description requires a fact-intensive inquiry** (emphasis added) *id.*, § 24.05.

Here, Defendant, Port Authority, created a hostile or offensive working environment, which constituted a violation of Title VII. Moreover, it does not begin to dispute any of the alleged facts in the Complaint. The best Defendant, Port Authority, can do is state, " While plaintiff alleges in each cause of action that the "Port Authority, through its agents, permitted such injuries to occur" (see Docket Entry No. 60-1, ¶¶ 104, 112, 122, 132 and 147), these allegations are nothing more than a formulaic recitation of a legal standard without any factual support." (See **Defendant, Port Authority's Memorandum of Law**.) However, the purpose of the Complaint is to level allegations based upon facts. That is precisely what was done here.

- 10

To the extent counsel wishes for the Complaint to serve some other additional purpose (*i.e.*, to reveal additional "factual support") she should be looking towards Discovery for additional "factual support," not at the Complaint. This is precisely why Discovery is required in the instant matter and why Defendant, Port Authority's motion must be dismissed in its entirety.

The simple fact is, Defendant, Port Authority is undertaking to dismiss the instant matter, all before a single sheet of paper has been exchanged in Discovery. Discovery will prove that Port Authority entered into agreement(s) with either (or both) Newark International Liberty Airport, and Defendant, Gateway Group One. Obviously, such evidence would support Plaintiff's arguments that Port Authority is consequently liable for the injuries sustained by Plaintiff, Arielle Fletcher, described at length in the Second Amended Complaint.

Again, Defendant, Port Authority has not provided a scintilla of evidence showing the absence of an agency relationship with either (or both) Newark International Liberty Airport, and Defendant, Gateway Group One, which is its burden. Based upon its failure to satisfy its burden to prove the absence of an agency relationship, discovery is necessary.

## CONCLUSION

Based upon the aforementioned reasons, Defendant, Port Authority's Motion to Dismiss must be denied in its entirety.

    Respectfully submitted,

*/s: Joseph Rakofsky/*
**JOSEPH RAKOFSKY, ESQ.**
*Attorney for*
*Plaintiff, Arielle Fletcher*

DATED: September 8, 2021